

The following constitutes the order of the Court.
Signed: May 13, 2019

_____
**Charles Novack**
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

In re:

ERIKA RODRIGUEZ,

    Debtor.

Case No. 18-10674 CN
Chapter 7

**ORDER RE: AUTOMATIC STAY VIOLATION**

    On May 1, 2019, this court conducted an evidentiary hearing on Chapter 7 debtor Erika Rodriguez's motion for damages under Bankruptcy Code § 362(k) arising from creditor National Funding, Inc.'s post-petition efforts to collect its Orange County Superior Court judgment against her. All appearances were noted on the record. The parties have requested that the court first address whether National Funding willfully violated the automatic stay, and if it so finds, to then allow Rodriguez's counsel to supplement the record with his time records. National Funding did willfully violate the stay, and this court will limit (for the moment) its damage analysis to whether Rodriguez incurred actual damages beyond her attorney's fees.

    Most of the pertinent facts are not in dispute. On July 24, 2018 National Funding obtained a $130,060.61 default judgment against Rodriguez in Orange County Superior Court. The Superior Court issued a writ of execution on July 26, 2018, and National Funding sent written instructions to the Sonoma County Sheriff's Office on August 1, 2018 to levy Rodriguez's Wells Fargo bank accounts. Rodriguez filed her Chapter 7 bankruptcy on October 1, 2018, and her counsel, Thomas Kelly, III, listed National Funding as a creditor and also filed and served a "Notice of Stay of

1

Proceedings" in the Orange County Superior Court action. National Funding concedes that it knew of Rodriguez's Chapter 7 by October 2, 2018.

The Sonoma County Sheriff's Office (the "Sheriff's Office") returned National Funding's August 1st instructions as defective, and National Funding sent new instructions on October 2, 2018.[1] On October 22, 2018, the Sheriff's Office levied against Rodriguez's accounts, the impact of which emptied Rodriguez's checking and savings accounts of their combined $236.41 balance and resulted in a $35.00 overdraft fee. None of these funds have been returned to Rodriguez, and National Funding has not reimbursed her for the $35.00 overdraft fee.[2]

Rodriguez learned of the bank levy on October 23rd when her attempt to buy donuts for her son's class with her debit card was declined due to insufficient funds. She testified that she was embarrassed by this event. Rodriguez first called the Sheriff's Office, which explained to her that it had levied her account, and then called Kelly. Kelly then filed his "Motion For Contempt" (the "Motion") on October 28, 2018 without making any effort to determine if the parties could resolve the stay violation without litigation.

Tara Muren, a staff attorney for National Funding, was its sole witness. The court found her to be a credible witness. Muren is an experienced collections attorney who is familiar with the Bankruptcy Code's automatic stay. She testified that when a judgment debtor files a bankruptcy, National Funding's standard practice is to contact the sheriff's department to cancel its pre-petition levy. Muren personally learned of Rodriguez's bankruptcy filing on October 10th, and she instructed her legal assistant, Stephanie Perez, to contact the Sheriff's Office to terminate the levy. National Funding was unable to introduce into evidence telephone records which allegedly would verify Perez's telephone call to the Sheriff's Office. National Funding also did not call Perez as a witness. Instead, National Funding sought to introduce into evidence - through Muren - Muren's undated (but signed) "Levy Termination Request" which Perez purportedly sent to the Sheriff's Office by efax on

---

[1] Rodriguez did not establish that Jennifer Duty, who signed the October 2nd instructions, knew of the bankruptcy before she sent the instructions to the Sheriff's Office.

[2] The testimony indicated that the Sheriff's Office still holds the levied upon funds.

2

October 10, 2018. The efax states that it was sent at 11:09 a.m. on October 10th to the Sheriff's Office's facsimile number.[3] Muren learned of the efax through Perez's November 5, 2018 email which, without written explanation, forwarded (by pdf attachment) the efax to Muren.[4]

National Funding contends that it timely instructed the Sheriff's Office to cancel the levy. A representative from the Sheriff's Office credibly testified, however, that its records (the "Action Correspondence for a Case") do not reflect that it received the efax or any other written instruction from National Funding before the October 22nd levy against Rodriguez's bank accounts. Instead, the Sheriff Office's records indicate that National Funding first instructed it to cancel the levy on or about November 5, 2018.

Muren testified that she learned of the bank levy when she received the Motion on November 2, 2018. Muren confirmed that Kelly never contacted National Funding before he filed the Motion, and that he did not return her initial telephone call to discuss the matter.

Rodriguez raised hearsay and authentication objections to Exhibit G. These objections are overruled. Muren authenticated the Levy Termination Request (the document that was faxed), and its instruction of "Please do not proceed with the Bank Levy for the above referenced case . . ." is not hearsay. Instead, the Levy Termination Request was a legally operative verbal act introduced to establish National Funding's attempt to terminate the Sheriff's Office s authority to levy on Rodriguez's Wells Fargo bank accounts. Out of court statements that are offered as evidence of legally operative verbal conduct are not hearsay. *United States v. Tann*, 425 F.Supp.2d. 26 (D.D.C. 2006), citing Advisory Committee Note, Fed.R.Evid. 801; *United States v. Pang*, 362 F.3d 1187 (9th Cir. 2004). Legally operative statements are those that establish the rights and duties of parties. *United States v. Cedeno-Cedeno*, 2016 U.S.Dist. LEXIS 109400, *22 (S.D.Cal. 2016), citing *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004). If the out of court statement's significant lies solely in the fact that it was made, no issue is raised regarding the truth of anything asserted, and the

---

[3] Exhibit R verifies that the telephone number used by Perez to fax the Levy Termination Request was the Sheriff Office's fax number.

[4] National Funding's Exhibit G contained Perez's October 10th efax, the Levy Termination Request, and her November 5th email to Muren.

statement is not hearsay. *Orlob-Radford v. Midland Funding LLC*, 2016 U.S. Dist. LEXIS 142598 (E.D.Wa. 2016), citing *Stuart v. UNUM Life Ins. Co. of America*, 217 F.3d 1145, 1154 (9th Cir. 2000). In most circumstances, commands or questions are not hearsay because they are not factual assertions. *Baines v. Walgreen Co,*, 863 F.3d 656, 662-63 (7th Cir. 2017).

The efax form is also admissible. The date and time "stamp" on this form were automatically produced by Perez's computer and efax software, and are not "statements" subject to the hearsay rule. See, *e.g.*, *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 936 (9th Cir. 2002). The remaining statements on the efax form are admissible as verbal acts. In addition, Muren authenticated the efax form. In the Ninth Circuit, the foundational requirement of authentication is satisfied by evidence establishing that the matter in question is what its proponent claims. *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000). Here, Muren credibly testified that the efax was what it purported to be. See Fed.R.Evid. 901(b)(1). Moreover, Fed.R.Evid. 901(b)(4) provides that a document may be authenticated by "The appearance, contents, substance, internal patters, or other distinctive characteristics of the item, taken together with all the circumstances." The efax contains Perez's name along with, among other things, the National Funding logo, address, and telephone number. Muren is a National Funding staff attorney who supervised Perez, and she is thus familiar with the look of National Funding emails.

Finally, Perez's November 5th email that forwarded the efax and Levy Termination Request to Muren does not contain any statement offered for the truth of the matter stated. While it is possible to construe it as nonverbal conduct intended by Perez as an assertion that she had complied with Muren's request to contact the Sheriff's Office (which would constitute a statement under Fed.R.Evid. 801(a)), the court is unwilling to stretch that far.[5]

Bankruptcy Code § 362(a) prohibits a creditor from enforcing a pre-petition judgment against the debtor or against property of the bankruptcy estate (§ 362(a)(2)) and more generally precludes a

---

[5] The last remaining evidentiary objection concerns National Funding's use of an unsealed deposition transcript to impeach Rodriguez. The court is unaware of any local rule or Federal Rule of Evidence that required National Funding to provide the court with a "sealed" original deposition transcript. Indeed, National Funding read from the transcript, and Rodriguez's attorney did not question the accuracy of the recitation. Accordingly, Rodriguez's objection is overruled.

creditor from taking any act to collect, assess, or recover a pre-petition claim against the debtor (§ 362(a)(6)). National Funding's post-petition levy against Rodriguez's bank accounts clearly violated the automatic stay. Bankruptcy Code § 362(k) allows Rodriguez to recover damages for willful violations of the automatic stay. Section 362(k) provides in pertinent part that "an individual injured by any willful violation of the automatic stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." National Funding's failure to stop the levy constituted a willful violation. Willful conduct requires that 1) the creditor know of the automatic stay and 2) the actions that violate the stay be intentional. No specific intent is required, and a creditor's good faith belief that its conduct did not violate the automatic stay carries no weight in determining whether the act was willful. *In re Peralta*, 317 B.R. 381, 389 (B.A.P. 9th Cir. 2004). National Funding knew of the automatic stay, and its efforts to instruct the Sheriff's Office to terminate its collection efforts were inadequate. The automatic stay imposes on creditors an affirmative duty to discontinue collection activities once it learns of the bankruptcy. *Eskanos & Adler v. Leetien*, 309 F.3d 1210 (9th Cir. 2002). While National Funding established that it sent the Levy Termination Request, it needed to verify that someone at the Sheriff's Office had read and acknowledged it. Absent this simple step, National Funding did not know whether its efax - while sent- was also, in a real sense, received. Accordingly, Rodriguez is entitled to recover as damages the $236.41 in funds removed from her Wells Fargo accounts and the $35.00 overdraft fee imposed by the bank.[6]

Rodriguez has not demonstrated by a preponderance of the evidence that she is entitled to emotional distress damages due to the "donut episode." A debtor may recover emotional distress damages "if the individual provides clear evidence to establish that significant harm occurred as a result of the violation. . . . To be entitled to damages for emotional distress under [§ 362(k)], an individual must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay

---

[6] Rodriguez testified that Wells Fargo charged her $310.00 in overdraft fees. As the court noted on the record, she did not demonstrate that any overdraft charge beyond the $35 fee posted on November 6, 2018 was caused by the levy.

(as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." *Dawson v. Wash.Mut.Bank (In re Dawson)*, 390 F.3d 1139, 1148-49 (9th Cir. 2004). Fleeting or trivial anxiety or distress do not justify an award of damages. *Ibid*. Rodriguez's testimony indicates that her discomfort, while real, was momentary and slight.

Rodriguez also seeks to recover her attorney's fees and costs. Kelly shall serve and file an appropriate declaration (to which he should attach his time records and costs) and memorandum of law by May 28, 2019. National Funding may file an opposition by June 11, 2019, and Rodriguez may file a reply by June 18, 2019. The court will have a hearing on the fees and costs on June 19, 2019 in its Santa Rosa courtroom at 11:00 a.m. The parties may appear telephonically at this hearing. In its opposition, National Funding should state whether this court should conduct an evidentiary hearing to determine fees and costs. In addition, both parties should address whether Rodriguez satisfied her duty to mitigate this aspect of her damages. See *Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 12 (B.A.P. 9th Cir. 2002).

* * * END OF ORDER * * *

Case No. 18-10674 CN

**<u>COURT SERVICE LIST</u>**

All recipients are ECF participants.