Entered on Docket
April 02, 2020
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED
APR 2 2020
SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NC-19-1191-FBTa |
| ERIKA RODRIGUEZ, | Bk. No. 18-10674 |
| Debtor. | |
| ERIKA RODRIGUEZ, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| NATIONAL FUNDING, INC., | |
| Appellee. | |

Argued and Submitted on March 26, 2020

Filed – April 2, 2020

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Charles Novak, Chief Bankruptcy Judge, Presiding

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

Appearances:    Thomas Philip Kelly, III argued on behalf of appellant; Jennifer E. Duty on the brief for appellee.

Before: FARIS, BRAND, and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

The bankruptcy court held that creditor National Funding, Inc. willfully violated the automatic stay when it levied chapter 7[1] debtor Erika Rodriguez's bank accounts. Ms. Rodriguez sought to recover $29,000 in attorneys' fees and $2,500 in costs, but the court awarded $7,875 and $81, respectively, because she had failed to mitigate her damages before filing a motion for contempt.

Ms. Rodriguez appeals, arguing that the bankruptcy court should have awarded her the full amount of her claimed fees and costs and did not provide adequate reasons for discounting her award.

The bankruptcy court acted within its discretion. We AFFIRM.

## FACTUAL BACKGROUND

**A.    Prepetition events**

In 2018, Ms. Rodriguez defaulted on a business loan from National Funding. National Funding obtained a $130,060 default judgment against

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

2

her in state court, and the state court promptly issued a writ of execution.

On August 1, National Funding sent instructions to the Sonoma County Sheriff's Department to levy Ms. Rodriguez's bank accounts.

**B.   Ms. Rodriguez's bankruptcy case**

Ms. Rodriguez filed a chapter 7 petition on October 1, 2018. Her creditor matrix included National Funding, care of its attorney, Jennifer E. Duty. She also filed a notice of stay of proceedings in the state court action.

National Funding conceded that it knew of Ms. Rodriguez's petition by October 2. Nevertheless, on that date, it sent the sheriff's office new instructions to enforce the writ of execution. On October 10, a staff attorney for National Funding, Tara Muren, personally learned of Ms. Rodriguez's bankruptcy case. She claimed that she directed her legal assistant to contact the sheriff's office to terminate the levy that day.

For whatever reason, the sheriff's office did not receive notice of the levy termination. On or around October 22, it levied Ms. Rodriguez's checking and savings accounts, recovering a total of $236.41.

Ms. Rodriguez attempted to withdraw funds after the levy, which resulted in a $35 overdraft fee. Neither the sheriff's office nor National Funding has ever returned the funds to Ms. Rodriguez.

**C.   Ms. Rodriguez's motion for contempt**

Ms. Rodriguez notified her attorney, Thomas P. Kelly III, that the sheriff's office had levied her accounts. Mr. Kelly did not contact National

Funding or otherwise informally attempt to resolve the stay violation.

Rather, Mr. Kelly (on behalf of Ms. Rodriguez) filed a motion for contempt ("Contempt Motion") against National Funding in the bankruptcy court. Ms. Rodriguez argued that she had given National Funding notice of her bankruptcy filing, but it nevertheless violated the automatic stay by levying her bank accounts.

National Funding opposed the Contempt Motion and blamed the levy entirely on the sheriff's office. It claimed that it had cancelled the levy by phone, mail, and e-fax and provided copies of the undated levy termination request. It argued that it did not willfully violate the automatic stay and that damages were not warranted because Ms. Rodriguez did not contact National Funding to try to resolve the stay violation amicably.

At the hearing on the Contempt Motion, the bankruptcy court questioned whether National Funding had documentation proving when it sent the notice of levy termination to the sheriff's office; counsel replied that there was an e-mail but no other fax confirmation. Ms. Rodriguez's counsel represented that the sheriff's office informed him that it had not received any cancellation notice from National Funding. Due to the factual disputes, the court set a continued hearing and allowed the parties to conduct discovery. Ms. Rodriguez's counsel did not object.

The parties deposed Ms. Rodriguez and the sheriff's office's representative, Ruth Cooper, and filed supplemental briefs.

At the continued hearing on the Contempt Motion, the bankruptcy court noted that there was still a question of fact about whether and when National Funding attempted to terminate the levy. Mr. Kelly initially insisted that there was no factual dispute. Eventually, when it became clear that the court would not decide the issue absent an evidentiary hearing, he agreed to a hearing: "Yes, as to the Sonoma County Sheriff's state of knowledge and at what point did they receive notice, if any, from National Funding?"

Ms. Cooper, Ms. Rodriguez, and Ms. Muren (the National Funding staff attorney) testified at the evidentiary hearing. Ms. Cooper reiterated that the sheriff's office did not have any record of National Funding contacting it to terminate the levy prior to October 28, 2018.

Conversely, Ms. Muren testified that she personally became aware of Ms. Rodriguez's bankruptcy case on October 10 and instructed her assistant to terminate the levy that day. She explained that she created a document directing the sheriff's office to halt the levy, which her assistant sent via e-fax. She said that she did not realize that the sheriff's office had levied the bank accounts until she reviewed the Contempt Motion.

In its written order, the bankruptcy court found that National Funding "clearly violated the automatic stay" and that its failure to stop the levy was a willful violation because it knew of the automatic stay and its efforts to terminate the collection efforts were inadequate. It awarded

5

Ms. Rodriguez $236.41 plus the $35 overdraft fee. However, it declined to award her emotional distress damages because her discomfort and embarrassment were "momentary and slight."

The bankruptcy court instructed Mr. Kelly to file documents in support of the request for fees and costs. It also directed both parties to address whether Ms. Rodriguez satisfied her duty to mitigate her damages.

### D.    The fees and costs award

Ms. Rodriguez filed a motion for attorneys' fees and costs ("Fees Motion") claiming $29,610 in attorneys' fees and $2,564.34 in costs. She argued that National Funding's strategy of "maximum confrontation" prolonged the dispute and required significant work. She further argued that she did not need to mitigate her damages, because National Funding caused the injury and failed to provide any evidence that it would have done anything differently even if she had contacted it.

National Funding opposed the Fees Motion and argued that Ms. Rodriguez failed to mitigate her damages by filing the Contempt Motion without contacting National Funding and refusing to engage in settlement discussions.

The bankruptcy court held a hearing on the Fees Motion and ruled that Ms. Rodriguez was entitled to reasonable attorneys' fees but not the full amount claimed. It found that, had Ms. Rodriguez reached out to National Funding prior to filing the Contempt Motion, "there's little doubt

6

that National Funding would have promptly returned the funds that the sheriff removed from her bank accounts." The court stated that it was "not adopting a per se rule that requires debtors to send a cease and desist letter before filing a Section 362(k) motion, but in this instance, that would have been a far more appropriate method to take. You don't need a house to squash a mosquito, and that's exactly what I have here . . . ."

The bankruptcy court awarded Ms. Rodriguez $7,875 in attorneys' fees and $81.64 in costs. It explained that it was awarding fees and costs only through the first hearing on the Contempt Motion, or roughly twenty hours, which represented "more than enough [time] to understand the scope of the problem, to contact National Funding, and to resolve this. And that's what should have been done."

Ms. Rodriguez timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in awarding Ms. Rodriguez less than the full amount of attorneys' fees and costs that she incurred while prosecuting the Contempt Motion.

## STANDARD OF REVIEW

We review the amount of sanctions imposed for a willful violation of

the stay, including an award of attorneys' fees and costs, for an abuse of discretion. *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002) (citing *Franchise Tax Bd. v. Roberts (In re Roberts)*, 175 B.R. 339, 343 (9th Cir. BAP 1994)); *see Am.'s Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1101 (9th Cir. 2015) (en banc) ("[C]ourts awarding fees under § 362(k) thus retain the discretion to eliminate unnecessary or plainly excessive fees." (citation omitted)).

To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

## DISCUSSION

### A. The bankruptcy court did not abuse its discretion in awarding Ms. Rodriguez less than the full amount of her fees and costs.

Ms. Rodriguez argues that the bankruptcy court erred in discounting her award of attorneys' fees and costs because she failed to mitigate her damages. We discern no abuse of discretion.

Section 362(k) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages,

including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." § 362(k)(1). The Ninth Circuit has held that, while the award of attorneys' fees is mandatory, courts have discretion to determine the reasonableness of the award:

> Although § 362(k) makes such fee awards mandatory rather than discretionary, we do not think that feature of the statute will result in unnecessary litigation brought solely to drive up the award. **Only an award of fees reasonably incurred is mandated by the statute**; courts awarding fees under § 362(k) thus retain the discretion to eliminate unnecessary or plainly excessive fees.

*In re Schwartz-Tallard*, 803 F.3d at 1101 (citation omitted) (emphasis added).

When considering attorneys' fees for a stay violation, "[c]ourts in other circuits have applied the standard of § 330 for compensating professionals in bankruptcy, which provides for 'reasonable compensation for actual, necessary services.'" *Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 11 (9th Cir. BAP 2002) (citations omitted). The reasonableness of fees is determined by using the "lodestar" approach[2] and by considering the particular circumstances of each case. *Id.* Courts may also consider the proportionality of the attorneys' fee award in relation to the damages sought. *See In re Beebe*, 435 B.R. 95, 102 (Bankr. N.D.N.Y. 2010) (declining to

---

[2] The lodestar approach requires the bankruptcy court to determine the reasonable amount of fees by multiplying the number of hours reasonably spent by the attorney's reasonable hourly rate. *See Law Offices of David A. Boone v. Derham-Burk (In re Eliapo)*, 468 F.3d 592, 598 (9th Cir. 2006).

9

award attorneys' fees because "[p]rosecution of the willful stay violation simply was not reasonable in this case to determine and enforce appropriate sanctions").

Additionally, we have noted that the reasonableness inquiry requires a court to determine whether the debtor could have mitigated her damages:

> [I]n determining reasonable damages under § 362(h) [now § 362(k)], the bankruptcy court must examine whether the debtor could have mitigated the damages. Generally, in determining the appropriate amount of attorneys' fees to award as a sanction, the court looks to two factors: "(1) what expenses or costs resulted from the violation and (2) what portion of those costs was reasonable, as opposed to costs that could have been mitigated."

*In re Roman*, 283 B.R. at 12 (quoting *In re GeneSys, Inc.*, 273 B.R. 290, 296 (Bankr. D.C. 2001)).

In the present case, Mr. Kelly represented that he had billed over $30,000 in fees and costs prosecuting the Contempt Motion against National Funding. The bankruptcy court, however, found that this amount was unreasonable and awarded $7,875 in fees and $81 in costs, representing work through the first hearing on the Contempt Motion.

Ms. Rodriguez argues that the bankruptcy court imposed a "meet and confer requirement for stay violation motions." She contends that the bankruptcy court "stated a rule that would have required a third notice of

10

the [automatic stay] by mandating a further meet and confer letter from Appellant's counsel." (National Funding received notice once from the bankruptcy court when Ms. Rodriguez filed her petition and again when she filed a notice of automatic stay in the state court case.)

Ms. Rodriguez misconstrues the bankruptcy court's ruling. It never imposed a "meet and confer" requirement and did not dispute that National Funding had notice of the automatic stay. Indeed, it stated that it was "not adopting a per se rule that requires debtors to send a cease and desist letter before filing a Section 362(k) motion . . . ."

Rather, the bankruptcy court evaluated the reasonableness and proportionality of Ms. Rodriguez's actions in light of National Funding's stay violation. The court found that this case involved a relatively minor violation that National Funding would have quickly remedied, had Ms. Rodriguez contacted it directly, rather than taking the more confrontational route of filing the Contempt Motion. It found that her actions resulted in needless litigation and, by implication, unreasonably large fees. These findings were not clearly erroneous.

Ms. Rodriguez acknowledges that she had a duty to mitigate her damages but contends that all of the billed attorneys' fees were appropriate. She argues that National Funding increased litigation costs by

11

pursuing a highly confrontational and meritless strategy.³

We are sympathetic to Ms. Rodriguez's arguments. Based on our review of the record, we are less optimistic than the bankruptcy court about National Funding's response to an informal request. National Funding's responses were consistently energetic and never conciliatory: it sent an amended levy request to the sheriff on the very day it first received notice of the bankruptcy filing; it made only ineffectual (if any) efforts to correct its violation until Ms. Rodriguez filed her Contempt Motion; and it mounted a full-throated, aggressive litigation strategy in response to that motion. We also note that most of Ms. Rodriguez's fees and costs were incurred during the discovery, supplemental briefing, and evidentiary hearing that National Funding and the court insisted were necessary (and that Mr. Kelly initially argued were unnecessary). But we can only review the cold paper record, and we do not have the benefit that the bankruptcy court enjoyed of first-hand observation of the proceedings. We cannot say that the court's findings were illogical, implausible, or without support in the record.

**B.     The bankruptcy court adequately explained the reduced award.**

Ms. Rodriguez argues that the bankruptcy court erred by failing to

---

³ In her reply brief, Ms. Rodriguez argues that National Funding waived the issue of who was at fault in driving the litigation. But National Funding addressed its position in its answering brief by asserting that it promptly took actions to cancel the levy and providing appropriate citations to the record.

explain the rationale behind the fees and costs award. We disagree.

The Ninth Circuit has repeatedly recognized the trial court's discretion in awarding attorneys' fees but has cautioned that "[i]t remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)) (civil rights claims). This requires the court "to give at least some indication of how it arrived at the amount of compensable hours for which fees were awarded to allow for meaningful appellate review. Although we do not require 'an elaborately reasoned, calculated, or worded order . . . [and] a brief explanation of how the court arrived at its figures will do,' 'something more than a bald, unsupported amount is necessary.'" *Id.* (citations omitted). Nevertheless, when considering an award of attorneys' fees, the court is not required to go line-by-line through the billing records:

> [T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of "the district court's superior understanding of the litigation."

*Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 437) (civil rights claims).

13

Ms. Rodriguez contends that the bankruptcy court failed to "articulate any basis why the fees and costs sought were unreasonable and excessive." This is not correct. As discussed above, the bankruptcy court found that a phone call to National Funding's counsel might have resolved the situation, so most of the services Ms. Rodriguez's counsel rendered were unnecessary.

Ms. Rodriguez further argues that the court did not explain why it allowed fees and costs only up to the first hearing, particularly when the court ordered discovery and additional hearings. She is incorrect. The court explained that it was awarding fees through the first hearing and that twenty hours represented more than enough time for Mr. Kelly to proceed reasonably by consulting with Ms. Rodriguez, contacting National Funding, and resolving the stay violation. The court found that $7,875, or roughly twenty hours, was "generous" in light of the amount of work it should have taken to resolve this issue. It was not required to undertake a line-by-line analysis of Mr. Kelly's bills, and we defer to the bankruptcy court's judgment as to what constituted a reasonable amount of time.

As to the work required beyond the first hearing, Ms. Rodriguez claims that she did not want discovery and additional hearings. As we have stated, we are sympathetic to her position. But we do not believe that the bankruptcy court abused its discretion by requiring these proceedings to resolve the factual disputes or by denying Ms. Rodriguez's request for

fees for those proceedings based on its not-clearly-erroneous finding that Ms. Rodriguez could have avoided those proceedings altogether.

In sum, the court did not abuse its discretion when it decided that Ms. Rodriguez could have remedied the stay violation with twenty hours of attorney time worth $7,875.

## CONCLUSION

The bankruptcy court did not err. We AFFIRM.